IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| MARY FORTE, an individual resident in Fauquier County, Virginia, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | CASE NO. 1:23CV-1644 |
| LEAFFILTER NORTH, LLC., an Ohio Corporate Entity, headquartered in Hudson, Ohio, | ) ) ) ) | |
| Defendant. | ) ) ) | |

_____

**COMPLAINT FOR FRAUD, BREACH OF CONTRACT,
AND VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT**

COMES NOW the Plaintiff, Mary Forte (hereinafter "Forte") by counsel who files this Complaint for Fraud, Breach of Contract and Violation of the Virginia Consumer Protection Act.

**THE PARTIES**

1.      The Plaintiff, Forte, is an individual homeowner resident at 8080 Enon Church Road, The Plains, Virginia 20198.  Forte at all relevant times hereto was a resident and citizen of the Commonwealth of Virginia.

2.      The Defendant, LeafFilter North, LLC. (hereinafter "LeafFilter"), at all times relevant to this action was and is an Ohio Limited Liability Company, headquartered at 1595 Georgetown Road, Hudson, Ohio 44236.  LeafFilter does business throughout the United States and has some 48 state locations.  The operation in Virginia is owned directly by LeafFilter based in Hudson, Ohio.

## JURISDICTION AND VENUE

3.      Jurisdiction hereto is pursuant to 28 U.S.C. §1332.  There is complete diversity between the Plaintiff and Defendant, and the claim in this cause of action exceeds $75,000.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant regularly conducts business, marketing, promotion, and selling either directly or indirectly through related entities within the jurisdiction of this District and is therefore deemed to reside in this District for the purposes of venue.

## NATURE OF THE ACTION

5.      Defendant is the exclusive distributor of a defective gutter protection system known as LeafFilter, which is designed, marketed, and sold at a significant premium emphasizing itself as a low-to-no maintenance alternative to traditional gutter cleaning devices and systems.  In particular, in all its extensive advertising and promotion, Defendant emphasizes that the homeowner will no longer have any need to use tall, dangerous ladders to reach gutters for periodic cleaning.  LeafFilter promises that "when our ladder goes up, yours goes down forever."

6.      In reality, LeafFilter possesses a latent defect that both prevents substantial amounts of rainfall from passing through the system, causing rainwater to flow over the top of the LeafFilter system – in fact, far more water than caused by partially clogged standalone gutters – and causes debris to accumulate on top of the LeafFilter system that must be cleaned off frequently by the homeowner.  The defect renders the product unfit for its initial intended purpose, as it substantially reduces the ability of water to enter the gutters over which LeafFilter is installed.  Indeed, the debris accumulation must be cleaned off periodically to allow water of any importance to enter the gutters.

7.      Defendant never disclosed to Plaintiff, orally in its many conversations with Plaintiff or in its online and print marketing materials, that the defect exists.  To the contrary,

Defendant's entire pitch to sell its system is that LeafFilter "allows as much water as an open gutter." As a result, Forte was deceived into purchasing LeafFilter without knowing that its installation would cause substantial rainwater to run over the top of the gutters and constantly required debris to be cleaned from the top of the LeafFilter system.

8.     Defendant for many years has known of and actively concealed the LeafFilter defect. Throughout the United States, hundreds of consumers had filed complaints with local Better Business Bureaus and respective state attorney generals against Defendant. Most importantly, Defendant was a defendant in a large nationwide class-action lawsuit filed in the U.S. District Court for the Southern District of Ohio (Eastern Division) – Case No. 2:20-cv-6229 with an Amended Complaint filed in April 2021 – concerning this precise same defect. On March 29, 2023, the Ohio District Court approved a $5.2 million class settlement against Defendant. Thus, for the entire negotiation and installation with Forte, LeafFilter was engaged in this massive litigation.

9.     Had Forte known of the defect or the multiple consumer complaints against Defendant or the nationwide class-action lawsuit, she would not have purchased LeafFilter. On or about December 2, 2021, Forte signed an agreement with Defendant to install LeafFilter. The original contract is attached hereto as **Exhibit A**.

**BACKGROUND FACTUAL AVERMENTS**<br>**COMMON TO ALL COUNTS**

10.     Defendant aggressively markets its product through mailed leaflets, newspaper advertising, televison advertising and extensive online promotion. Defendant particularly targets elderly consumers who are at a heightened risk of falling from ladders. Defendant's brochure specifically warns that an estimated 424,000 individuals die from falls globally, and every 20

minutes an older adult dies from falling in the United States.  An entire page in the brochure is dedicated to "Ladder Falls" statistics, with a repeating graphic of an elder man falling off a ladder.

11.     Defendant offers a fully transferable, lifetime, no-clog warranty.

12.     Defendant's installers clean, repair or realign the existing gutters prior to installation of LeafFilter.  In other words, LeafFilter is installed only if the existing gutter system can be adjusted, if need be, to accommodate the new system.

13.     The LeafFilter, according to Defendant's website, is a patented 3-piece system comprised of a micromesh screen of surgical grade stainless steel (275-micron mesh); a uPVC frame that never warps or deteriorates and with the right pitching installed sheds debris while still accepting water; and structured (hidden) hangers that securely fasten the system to the customer's fascia boards.  The system is guaranteed to avoid water damage to a home from water overflow.

14.     Forte received Defendant's sales brochure that failed to disclose the water runoff defect but instead boasted that LeafFilter would help protect the home from erosion, soffit/fascia rot, a flooded basement, ice dams, and the potential fire hazard of debris-filled gutters.  Forte believed that LeafFilter was a premium product worth the high price.

15.     The characteristics of the defect were present when the product left its factory.

16.     The resulting overflow at Plaintiff's home was substantial, especially in heavy rains.  The home's foundation, patios, attached pergola wooden roofs, and stone walkways became saturated as if the home were without any gutter system whatsoever.

17.     Forte by phone and by emails reported the overflow problem and subsequent harm to the home.  Several LeafFilter inspectors finally came to the home (after substantial delay); each had a different theory of why the system was not working.  No one mentioned the defect well known to Defendant.  Officials at headquarters in Ohio were unresponsive or rude and ignored

Forte's representations that such overflow in moderate or heavy rains was new and had not occurred prior to Defendant's installation.

18.     The customer-service personnel in Ohio at first ignored Forte.  When Forte persisted in her complaints, LeafFilter offered to install certain diverters and other corrections that did not appear likely to solve the problem.  The field representatives of LeafFilter who came out to Forte's home were not enthusiastic about any of the "fixes."  Moreover, LeafFilter insisted that once the chosen "correction" was installed, Forte had to give up all further claims and agree to permanent nondisparagment of LeafFilter.  Defendant would not, however, warrant the additional technology.

19.     At no time did LeafFilter admit the presence of the latent defect.  At one point, a customer service representative stated that the LeafFilter warranty provided only that no debris would go through the mesh and clog the gutters below the LeafFilter.  Thus, Forte's claim about overflow and accumulation of debris *on top of the mesh* would not constitute a breach of warranty.

20.     Defendant ultimately refused to respond to Forte when she insisted that LeafFilter would have to guarantee any so-called corrective technology.  Forte was informed by Defendant that the matter was closed.  Forte at trial will detail nearly a year's worth of obvious obstruction and debilitating slow stalling.

21.     Meantime, all-the-while, Forte's damages and future risks have accumulated.

## COUNT I - FRAUD

22.     Plaintiff incorporates herein paragraphs 1-21 of this Complaint as if originally plead here.

23.     Despite its exclusive knowledge, Defendant did not disclose to Plaintiff as a prospective purchaser that LeafFilter contains a material defect causing overflow and debris accumulation and that Defendant could not repair the defect in the product.

24.     The defect defeats the entire purpose of the product.  Forte reasonably expected that the installed system would allow water to enter her gutter system in sufficient amounts to prevent overflows and not allow debris to accumulate.  Forte reasonably had no expectation whatsoever that the LeafFilter system would suffer from the defect.

25.     Defendant's official Limited Lifetime Warranty, attached hereto as **Exhibit B**, is specifically and surreptiously crafted so as not to cover the defect.  Indeed, the only condition covered is an *internal* clog:  "If at any time the LeafFilter Gutter Protection System allows the interior of your gutter to clog with debris causing your gutter to fill with water and overflow, LeafFilter North, LLC., the company that distributes LeafFilter, will provide replacement product or refund you 100% of the material purchase price for all LeafFilter materials installed on your home."

26.     The defect, however, does not cause the interior of the gutter to become clogged but rather reduces the ability of the water to enter the gutter and effectively clogs the top or LeafFilter's "lid" with the accumulation of debris.  Thus, Defendant's warranty is essentially worthless – a fact it spins in a positive and misleading light in its marketing materials: "LeafFilter has been sold in North America for 20 years and has NEVER allowed a single gutter or drain spout to clog."

27.     The Lifetime Limited Warranty is not exclusive, however, and specifically provides for "all implied warranties."  The first implied warranty would naturally be to permit the system to work as intended without any clogging whatsoever anywhere.

28.     When Forte complained to headquarters in Ohio, several representatives appeared over a year's time with proposed "fixes," but all the field representatives admitted that the repairs would not really work, and indeed, headquarters brazenly refused to warrant the proposed repairs or refund Forte's money should they fail.

29.     The existence of these additional "technologies" or repairs, not disclosed or even suggested initially at the time of agreeing to the installation of the LeafFilter system is evidence of full knowledge by Defendant of the defect and its fraudulent misrepresentation.

30.     The fraud here is deliberate, and only punitive damages to the fullest extent of Virginia law will deter Defendant in the future.

31.     The fact that the class-action lawsuit obviously did not deter Defendant from its sales campaign to Forte – and countless others, as the entire array of misleading national promotion continues to this day in full cry – argues inevitably for permitting aggrieved consumers the full extent of local remedies for fraud of this magnitude.  It should be emphasized that in the LeafFilter word, there is nothing unique about Forte's claims, which indeed were typical of the claims of all the class members who purchased the same defective product.

32.     Any applicable statute of limitations in Virginia is tolled because of Defendant's fraudulent concealment.  At all relevant times, Defendant affirmatively concealed from Forte the defect alleged herein.

33.     Notwithstanding a duty to inform consumers of the defect, Defendant has made a practice of settling quietly with homeowners who complained about the system, requiring them to sign non-disclosure agreements.  The defect therefore remained in Defendant's exclusive access and control.  Thus, the applicable statute of limitations has been tolled with respect to any claims that Forte has as a result of the unlawful and fraudulent course of conduct described herein, at least until Forte discovered the fraud.

34.     Defendant is further estopped from asserting any limitations defense, statutory, equitable, contractual or otherwise to the claims alleged herein by virtue of its acts of deliberate fraudulent concealment.

35.     Under all the circumstances, Defendant's conduct in employing unfair and deceptive trade practices was malicious, willful, wanton, and outrageous such as to shock the conscience of the community and warrants the imposition of punitive damage.

36.      Put simply, the failure to disclose that a gutter screen prevents water from entering the gutter is a material concern of quality and fitness for intended use.  Whether a supposedly maintenance free product requires a customer to climb a ladder frequently to clear the accumulated debris is a material concern related directly to quality and likely to induce a potential customer to refuse to purchase the LeafFilter system.

37.     Defendant's fraud impacts the public interest.  Defendant's commitment to the acts and practices described in this Complaint pervades the course of its everyday business.  The conduct is part of Defendant's generalized course of business and continues today.  There is a real and substantial potential for repetition of harm to many future customers.

WHEREFORE, the Court is asked to award the full maximum of $350,000 punitive damages allowed by law to Plaintiff.

## COUNT II - BREACH OF CONTRACT

38.     Plaintiff hereby incorporates herein paragraphs 1-37 of this Complaint as if originally plead here.

39.     Defendant intentionally concealed a known defect that would have, if known to Plaintiff, prevented the purchase of Defendant's product.  Defendant had a duty to disclose this material defect.  Defendant knew that the omitted material facts were known and accessible only to Defendant and not readily discoverable by Forte.

40.     Forte subsequently gave Defendant every opportunity to rectify the defect, if possible.  Defendant refused to cooperate and shut down all reasonable attempts to cure.

41.     Virginia law provides in such circumstances for the recovery of actual or consequential damages incurred proximately by the fraud by LeafFilter North.

42.     The overflow of water from the defective LeafFilter during moderate to heavy rains has caused extensive damage to Forte's basement, foundation, duct system, walkways, patio surfaces, erosion and plantings.

43.     Plaintiff will prove at trial that the reasonable estimate to repair damages thereby caused is in excess of $100,000.

44.     Forte paid LeafFilter in December 2021 a total of $24,230.

WHEREFORE, the Court is asked to award Forte the return of all monies paid to Defendant, the full amounts of attorney fees and other costs associated with pursuing her full contractual rights, and such estimated costs of repairs consequential to water overflow damage proved at trial.

## COUNT III – VIRGINIA CONSUMER PROTECTION ACT

45.     Plaintiff hereby incorporates herein paragraphs 1-44 of the Complaint as if originally plead here.

46.     Plaintiff and Defendant both fall within the meaning of protected consumer and covered merchant or supplier of the Virginia Consumer Protection Act of 1977, as amended, §59.1-196 *et seq*. ("VCPA").

47.     Defendant's intentional concealment of the defects in the LeafFilter system as described throughout this Complaint constitutes unfair, false, and deceptive practices likely to deceive, and did in fact deceive Forte, reasonable consumers in violation of the VCPA.

48.     Plaintiff would not have purchased the LeafFilter System absent Defendant's misrepresentations and omissions and if the true facts had been known (disclosed) before or at the time of its purchase.   The making and distribution of false, deceptive, and misleading

representations and the concealment and non-disclosure of a material defect constitutes deceptive sales practices in violation of the VCPA.  See §59.1-200 (A) 5, 6, and 14.

49.     The VCPA provides that a supplier who intentionally engages in unfair or deceptive trade practices in connection with a consumer transaction is subject to treble damages for such harm (see §59.1-204).

WHEREFORE, the Court is asked to award Forte treble damages for all actual damages awarded under Count II and such other relief as may be just and appropriate for such intentional conduct under the VCPA.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Date:  December 4, 2023

Respectfully submitted,


_ /s/ John C. Morgan _____
John C. Morgan, VSB # 30148
John Carter Morgan, Jr., PLLC
20B John Marshall Street
Warrenton, Virginia 20186
540.349.3232
Fax 888.612.0943
jcm@newdaylegal.com

# EXHIBIT A

**LeafFilter™ North, LLC**
- 5360 South Laburnum Avenue, Richmond, VA 23231
- 3931 Avion Park Ct., Suite C-104, Chantilly, VA 20151
- 719 Gainsboro Road NW, Roanoke, VA 24016

**Main**          **1-800-290-6106**

**Leaf Filter** GUTTER PROTECTION

**Customer Service 1-800-749-4566**
www.LeafFilter.com
License #2705169445

NVAO 9982

THIS AGREEMENT, made and entered into between _MARY FORTE_ , (OWNER) and

LeafFilter™ North, LLC (CONTRACTOR), who agrees to furnish all labor and materials necessary to perform the work hereinafter on

the premises of the Owner located at _8080 ENON CHURCH RD_ , in the city of _THE PLAINS_ ,

State of _VA_ Zip Code _20198_ PH# _305-803-1444_ ALT.PH# ____

Email Address: ____

_CLEAN EXISTING GUTTER INTERIORS, SEAL W/ SILICONE_
_REALIGN & REPAIR AS NEEDED, INSTALL BRACKETS,_
_+LEAF FILTER. INCLUDES LIFETIME TRANSFERABLE_
_WARRANTY W/ NO CLOG GUARANTEE, TAXES, INSUR,_
_INSTALL CLEAN UP, ALL COUPONS + DISCOUNTS_
_INCLUDES POOLHOUSE, MAINHOUSE, + GARAGE._

_COLOR: BRONZE_

**PAYMENT TERMS:**
In consideration of the labor, material and repair, if any, furnished by said Contractor, the Owner agrees to pay to the Contractor:

A. Contract Price, including tax $ _15,583⁰⁰_       Approx. Start & Completion Date: _INSPECTION THURS,_

Down Payment          $ _0_       ____ (last 4-digits CC) SID # ____

Unpaid Balance        $ _15,583⁰⁰_       ____ (6-digit Auth) Plan # ____

**For Electronic payment of credit card, or financing, unpaid balance will be processed upon installation ____ (Owner Initial)**

Other Pay Terms: _CHECK ONLY WHEN DONE_

B. It is hereby understood and agreed that the unpaid balance of cash price or the bank completion certificate must be paid to the Seller's installer at the time the work is completed.
C. If full price for all contract work is not to be paid in cash, then this contract is subject to financing approval.
D. Installation is subject to production scheduling, weather conditions and related factors. The Contractor shall furnish materials for the work and complete the work to be done in a substantial and professional manner. All workmanship is guaranteed for one (1) calendar year. Service calls after one (1) year shall be subject to a service charge.
E. **You, the buyer, may cancel this Agreement of purchase by mailing a written notice to the seller post-marked not later than the third business day after the date this Agreement was signed.** It is agreed that if the Owner cancels this contract AFTER THREE (3) DAYS from date of acceptance and before commencement of work, through no fault of the Contractor, the Owner agrees to pay 25% of the contract price or the cost of the materials purchased by the Contractor to the date of cancellation, whichever is greater.

IN WITNESS WHEREOF, the Owner and Contractor have caused these present to be signed this:

Month ____ , Day ____ , Year 20 ____

_Mary Forte_
**Owner**

____
**Sales Representative**

____
**Owner**

# EXHIBIT B

# THE LEAFFILTER™ LIMITED LIFETIME WARRANTY

Leaf**Filter** GUTTER PROTECTION

This warranty, along with all implied warranties, lasts as long as you own your home and is fully transferable. If at any time the LeafFilter™ Gutter Protection System allows the interior of your gutter to clog with debris causing your gutter to fill with water and overflow, LeafFilter™ North, LLC ("LeafFilter™"), the company that distributes LeafFilter™, will provide replacement product or refund you 100% of the material purchase price for ALL LeafFilter™ materials installed on your home.

**The Warranty is Subject to The Following Terms And Conditions:** The LeafFilter™ Limited Lifetime Warranty (hereinafter referred to as "Warranty" or "The Warranty") is specifically limited to the promise described above. No other expressed warranties of product performance or liability for incidental damage are binding on LeafFilter™ or any of its affiliates, parents, subsidiaries or related companies. Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you. The Warranty does not cover damage to gutters, fascia boards, or roof substrate or surface caused by the installation of LeafFilter™ products. This Warranty is void if the Leaf-Filter™ product sustained damage from structural changes, adjacent trees or plant life, or an uncontrollable act of nature. This Warranty is void if the product is modified or altered from its original installation or any willful action was taken to impede or restrict the flow of water through the gutter system. An improper number of downspouts may limit the water carrying capacity of the gutter system and the resulting overflow is not covered by this Warranty. This Warranty is limited to single-family homes and to single-family units within a multi-unit structure. LeafFilter™ is not responsible for incidental damage resulting from ice dams or ice flows and makes no claim as to prohibiting ice dams. LeafFilter™ reserves the right to inspect and validate warranty claims. Buyer is responsible for informing LeafFilter™ within a reasonable time after discovery of a suspected defect and provide a written explanation of defect. Upon receipt of this correspondence, LeafFilter™ may request additional information including photos, and may require a field inspection.

**Registering The Warranty:** This Warranty is effective upon execution. You may register your Warranty at http://www.leaffilter.com/warranty/. LeafFilter™ must receive a copy of this document within 30 days of execution or Warranty may be void if you cannot show in a reasonable manner the date the product was purchased.

**If You Need Assistance:** If you have a claim regarding this Warranty you can contact a LeafFilter™ representative at:
**Service Phone:** (800) 749-4566
**Address:** 1595 Georgetown Road | Hudson, OH 44236.

A service representative will take your call or letter and take appropriate action to correct problems covered under this Warranty. This warranty gives you specific legal rights, and you may also have other rights, which vary from State to State. Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation may not apply to you. In addition, some states do not allow limitation on how long an implied warranty lasts, so the above limitation of implied warranties following transfer may not apply to you.

LF-LI-003 11/2019

---

JOB NUMBER: _____ 1146 95 22

## REGISTER YOUR WARRANTY ONLINE

Save time, save postage, and get email notifications for product information and service. Register your warranty online at:
**www.LeafFilter.com/warranty**



**1 REGISTER** at www.LeafFilter.com/warranty

**2 ENTER** your last name and your job number to verify your install.

**3 VERIFY** and correct your customer info to complete registration.

**4 A COPY** of the warranty will be emailed to you for your records.

